RICHARD L. HOLMES, Retired Appellate Judge.
Robbins Tire & Rubber Credit Union (credit union) appeals from a directed verdict granted in favor of Donald B. Hunt and Diana G. Brickley. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
In May 1992 Gary Shackleford, a member of both the credit union and the credit union committee responsible for the approval of loans, applied for a loan from the credit union in the amount of $29,806.00.
The breakdown of the loan was $17,741.12, the balance of a previous loan with the credit union, and $12,064.88, the additional amount that Shackleford desired to borrow! Shack-leford testified that he was borrowing approximately $3,500 to purchase a used car and that the remainder of the $12,064.88 was to be used to pay off another loan that his wife had at the credit union.
Shackleford asked his uncle, Hunt, and his sister, Brickley, to cosign the note securing the loan. Hunt, Brickley, and Shackleford’s mother, who is now deceased, cosigned the loan. It is undisputed that neither Hunt nor Brickley were made aware that the total loan amount was in excess of $29,000. In fact, both Hunt and Brickley were under the impression that they were cosigning a note for Shackleford to obtain a loan in the amount of $3,000 to $3,500 for a used car.
Shackleford defaulted on the loan, and the credit union filed suit against Shackleford, Hunt, and Brickley.
At the conclusion of a trial before a jury, Hunt and Brickley made a motion for a directed verdict. The trial court granted the motion in favor of Hunt and Brickley.
*970 We would note that the credit union made a motion for a directed verdict against Shackleford, which was granted in the amount of $28,081.20, plus court costs.
The credit union filed a motion to alter, amend, or vacate the trial court’s judgment in favor of Hunt and Brickley or, in the alternative, a motion for a new trial. The motion was denied and this appeal followed.
The credit union contends that the trial court committed reversible error when it granted the motion for a directed verdict in favor of Hunt and Brickley because, it says, there was sufficient evidence to submit the case to the jury on the issues of whether Hunt and Brickley, in fact, signed a guarantor agreement and whether there was a material alteration of the document, as defined by Ala.Code 1975, § 7-3^07.
The trial court determined that Hunt and Brickley did not sign a guarantor agreement. The trial court further determined that Hunt and Brickley signed a security agreement, but there was nothing to secure from them because they did not own the property pledged as security.
The first issue which we must decide is whether Hunt and Brickley, in fact, signed a guarantor agreement. As this court stated in Moody v. Schloss & Kahn, Inc., 600 So.2d 1045, 1047 (Ala.Civ.App.1992): “[W]hen the terms of the guaranty are clear and certain, its construction and legal effect are questions of law for the court.”
It is undisputed that when Hunt and Brickley signed the reverse side of a two-sided document entitled, “TRUTH . IN LENDING DISCLOSURE,” the front page of this document was not completed.
The completed truth-in-lending disclosure form, which was signed by Hunt and Brick-ley and was completed after their signatures were obtained, was introduced into evidence as Plaintiffs Exhibit No. 3. The front page of Plaintiff’s Exhibit No. 3 contains sections entitled, “ITEMIZATION OF THE AMOUNT FINANCED,” “CREDIT UNION PROMISSORY NOTE/SECURITY AGREEMENT,” AND “GUARANTOR AGREEMENT.”
As is required by Ala.Code 1975, § 5-19-6, the following language appears in eight-point type just above the signature lines of the promissory note/security agreement: “CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.” Shackleford’s signature, which was witnessed by the credit union clerk, appears on a signature line under the promissory note/security agreement section. The promissory note/security agreement section states that Shackleford granted the credit union a security interest in two automobiles that he owned and in his shares in the credit union. No other property was pledged as a security interest.
The “GUARANTOR AGREEMENT” appears at the very bottom of the front page. The guarantor agreement states, in pertinent part: “For value received, and in consideration of the credit given by the credit union above, the undersigned guarantor(s) ... hereby unconditionally guarantee payment when due of all present and future indebtedness incurred pursuant to the above promissory note.”
As is required by § 5-19-6, the following language appears in eight-point type just above the signature lines of the guarantor agreement: “CAUTION — IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.” However, there are no signatures under the guarantor agreement section.
We would also note that at the very bottom of the front page, under the signature lines of the guarantor agreement it states: “(SEE REVERSE SIDE FOR SECURITY AGREEMENT).” It does not say, (SEE REVERSE SIDE FOR CONTINUATION OF GUARANTOR AGREEMENT).
On the reverse side we find the following statement at the top of the page: “THE FOLLOWING TERMS AND CONDITIONS APPLY TO, AND ARE A PART OF, THE NOTE ON THE REVERSE SIDE.” Just below that statement is a section entitled, “SECURITY AGREEMENT.” This section provides the following in pertinent part: “To secure the payment of the promissory note on the reverse side ... I/we hereby grant, pledge, and convey unto the *971 credit union a security interest in the property listed on the reverse side.... ”
This security agreement section also provides, in pertinent part: “I/We hereby covenant and agree: (1) To pay each installment of said promissory note with interest on the due date....”
The signatures of Hunt and Briekley appear on the signature lines under the security agreement section. The cautionary language required by § 5-19-6 does not appear above the signature lines of the security agreement section or anywhere on the reverse side of Plaintiffs Exhibit No. 3.
Clearly, the language of Plaintiffs Exhibit No. 3 indicates that the guarantor agreement was located on the front page of the document. Hunt and Briekley did not sign the guarantor agreement. This was a question of law for the trial court and should not have been submitted to the jury. Moody, 600 So.2d 1045.
The trial court correctly directed a verdict in favor of Hunt and Briekley on the issue of whether they signed a guarantor agreement. Because Hunt and Briekley were not obligated under a guarantor agreement, we do not need to decide the issue of whether there was a material alteration of the document, pursuant to § 7-3^407.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
All the judges concur.